# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MUNGUIA,<br><br>        Petitioner,<br><br>    v.<br><br>JIM ROBERTSON,<br><br>        Respondent. | Case No. 1:18-cv-00743-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 19) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

On August 18, 2014, Petitioner was convicted by a jury in the Kern County Superior Court of first-degree burglary. The jury also found to be true that at the time of the commission of the residential burglary another person, other than an accomplice, was present in the residence. (2 CT[1] 342–43). Petitioner was sentenced to an imprisonment term of seven years and eight months to run consecutive to a seventeen-year sentence he received in a separate case. (2 CT 391). On December 29, 2016, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Munguia, 7 Cal. App. 5th 103, 107 (Cal. Ct. App. 2016). On

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on January 3, 2019. (ECF No. 21).

1  March 29, 2017, the California Supreme Court denied the petition for review. (LDs[2] 5, 6).

2        On May 31, 2018, Petitioner commenced the instant proceedings by filing a federal

3  habeas petition. (ECF No. 1). On November 5, 2018, the Court granted Respondent's motion to

4  dismiss the original petition for nonexhaustion and allowed Petitioner to proceed with the fully

5  exhausted first amended petition. (ECF No. 17). In the first amended petition, Petitioner asserts

6  that there was insufficient evidence to support his first-degree burglary conviction and the jury's

7  true finding on the person present allegation. (ECF No. 19). Respondent filed an answer. (ECF

8  No. 20).

9  **II.**

10  **STATEMENT OF FACTS[3]**

11  In 2011, the Bakersfield house Salvador Tejeda owned and lived in with his
   family was damaged by a fire.[4] Tejeda and his family moved into a different
12  house in Bakersfield and Tejeda, a general contractor, demolished their damaged
   home and began rebuilding it. After the fire, Tejeda's damaged house and his
13  neighbors' houses were a target for thieves. Juanita Howard, who lived several
   houses away from Tejeda, began patrolling the neighborhood once in the evening
14  before dark and once in the morning.

15  In May 2014, Tejeda's house was 95 percent complete and the only work left to
   be done was in the kitchen. Although there was no electricity to the house, there
16  was running water and he had furniture worth approximately $100,000 stored in
   the kitchen and living room.[5] By then, Tejeda and his wife had separated but he
17  intended to finish the house for his wife and children to live in. Tejeda did not
   keep clothes or toiletries in the house, but there were mattresses and a comforter
18  inside. He testified that at the time of the burglary, he had been spending the night
   at the house every other day to every three days for months, due to the numerous
19  break-in attempts, and he was continuing to stay there periodically.

20  On the latter point, Howard, who was a defense witness, testified she was aware
   of Tejeda staying overnight only one or two times. However, she also testified she
21  was not "buddy buddies" with him and would not know if he stayed other times.
   Additionally, his car was not visible even the one or two times she knew he was
22  staying overnight.

23  On May 4, 2014, Tejeda was at the house. After locking the windows and doors,
   he left at approximately 10:30 that night. The next morning, Howard saw the gate
24  to Tejeda's property was down and she called him at approximately 8:00 a.m. to
   let him know. He drove to the house and saw a window had been forced open. He
25

26  [2] "LD" refers to the documents lodged by Respondent on July 31, 2018. (ECF No. 13).
   [3] The Court relies on the California Court of Appeal's December 29, 2016 opinion for this summary of the facts of
27  the crime. See <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).
   [4] Tejeda testified the fire damaged the attic and the entire roof. His neighbor, Juanita Howard, testified the house
28  was destroyed by the fire and nothing was salvageable.
   [5] Tejeda had a portable generator he used for electricity.

also noticed that while the deadbolt was locked, the door handle lock was not set. As he always locked both, he concluded someone had unlocked the door handle from the inside.

Tejeda entered the house and noticed the tools he had in the family room near the rear of the house, including a portable table saw, were missing. He then located the table saw and other tools in the living room, near the entrance to the house. He also noticed a small coffee table had been moved from the kitchen to the family room, the wall-to-wall carpet in one of the bedrooms had been pulled back from the walls, the cover over one of the leather sofas had been removed, and blueprints for the house and some miscellaneous items had been moved. Small tools had also been gathered from around the house and placed in a tool bag. Nothing was taken from the house, however.

As Tejeda was walking downstairs, he heard footsteps upstairs. He then exited the house, locked the doors and called the Bakersfield Police Department. As he was waiting outside for the police in front of the house, Howard arrived and watched the back of the property by the alleyway for him.

A vehicle drove up and Munguia, who was driving, got out, approached Tejeda and asked if Tejeda could let his friend, who had been left behind, out of the house. Tejeda said no and told Munguia the police had been called. Munguia started walking toward his vehicle looking worried. The police arrived and Munguia drove away. Tejeda pointed out Munguia's departing vehicle to the police, and Officer Juarez pulled it over several blocks away. Ribeiro was in the back seat.

Police entered Tejeda's house, announced themselves and began checking rooms. Arambula then called down and let police know she was upstairs. She came down the stairs and was detained without incident.

Two sets of footprints were located inside the house. The footprints appeared to have been left by Vans-style shoes and did not match the sandals Arambula was wearing. After being notified of the footprints, Officer Juarez checked Munguia's and Ribeiro's shoes; both were wearing Vans-style shoes. Juarez transported them back to the house, compared their shoes to the footprints found in the house, and determined the type and size matched Munguia's and Ribeiro's shoes.

Munguia told Officer Juarez that he drove Arambula and Ribeiro to the hospital around 2:30 a.m. Ribeiro was released a couple of hours later and they drove around for a while. He got tired and parked on Panorama Drive, where Tejeda's house is located. Munguia admitted Ribeiro entered Tejeda's house through the kitchen window and opened the door for him and Arambula.[6] He also said he saw Ribeiro and a male subject leave the house carrying tools. He said he did not know the male subject's name, though, and he could not provide any description of him to Officer Juarez.

Munguia, 7 Cal. App. 5th at 107–09 (footnotes in original).

///

///

---

[6] The window was not large but a smaller person could fit through it and Ribeiro was petite.

3

# III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Harrington v. Richter</u>, 562 U.S. 86, 97–98 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70–71 (2003); <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id.</u> In addition,

the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer,

538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

**IV.**

**REVIEW OF CLAIMS**

**A.  Inhabited Dwelling**

In his first claim for relief, Petitioner asserts that the evidence was insufficient to support his conviction for first-degree burglary because the house where the offense occurred was a construction site rather than an inhabited dwelling. (ECF No. 19 at 4).[7] Respondent argues that this claim is not cognizable in federal habeas corpus because it essentially challenges the state court's interpretation of state law and that the California Court of Appeal reasonably rejected Petitioner's challenge to the sufficiency of the evidence. (ECF No. 20 at 13).

This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned opinion. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct at 1192.

In denying Petitioner's sufficiency of the evidence claim with respect to the inhabited dwelling element, the California Court of Appeal stated:

> **I. Sufficiency of the Evidence**
>
> . . .
>
> Further, Arambula and Munguia both argue Tejeda's house was a construction site and not an inhabited dwelling, and Tejeda did not intend to live there once he finished rebuilding it.
>
> The People contend the circumstances of the entry and the movement of items inside the house, damage to the carpet and Munguia's departure with a worried look on his face constitute sufficient evidence of the intent to commit theft; and the jury was not required to accept the alternate explanation offered by the defense. Additionally, the circumstances under which Tejeda and his family moved out of their home, the condition it was in at the time of the burglary, Tejeda's testimony he slept there overnight several times a week, and his intent to move back in support the jury's determination the house was an inhabited dwelling at the time of the burglary.

---

[7] Page numbers refer to the ECF page numbers stamped at the top of the page.

7

**A. Standard of Review**

On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055, cert. den. (2016) ___ U.S. ___ [136 S.Ct. 1714].) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (Ibid.) "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt ....'" (*People v. Nguyen, supra*, at pp. 1055–1056.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio, supra*, at p. 357.)

**B. First Degree Burglary**

First degree burglary is the entry into an inhabited dwelling with the intent to commit larceny or any felony. (§§ 459, 460.) "'[I]nhabited' means currently being used for dwelling purposes, whether occupied or not. A house … is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises." (§ 459; *People v. Harris* (2013) 57 Cal.4th 804, 842; *Magness v. Superior Court* (2012) 54 Cal.4th 270, 273.)

. . .

**2. Inhabited Dwelling**

What constitutes an "inhabited dwelling" is a question of fact. (*Vasquez, supra*, 239 Cal.App.4th at p. 1517; *People v. Burkett* (2013) 220 Cal.App.4th 572, 582 (*Burkett*).) No single factor, including use as sleeping quarters, is dispositive. (*People v. Hughes* (2002) 27 Cal.4th 287, 354–355; *Vasquez, supra*, at p. 1517.)

"'"Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence."' [Citation.] 'In addition a burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, mementos, heirlooms, and the other stuff of personal history are kept. Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses.'" (*People v. DeRouen* (1995) 38 Cal.App.4th 86, 91, disapproved on another ground by *People v. Allen* (1999) 21 Cal.4th 846, 865–866; *People v. Hughes, supra*, 27 Cal.4th at p. 355; *Burkett, supra*, 220 Cal.App.4th at p. 579; accord, *People v. Glazier* (2010) 186 Cal.App.4th 1151, 1158, 1161 (*Glazier*).)

"The "'inhabited-uninhabited' dichotomy turns not on the immediate presence or absence of some person but rather on the character of the use of the building."' [Citation.] '[T]he proper question is whether *the nature of a structure's composition* is such that a reasonable person would expect some protection from

unauthorized intrusion.'" (*People v. DeRouen, supra,* 38 Cal.App.4th at pp. 91–92; *People v. Hughes, supra,* 27 Cal.4th at p. 355.)

"A structure or dwelling 'is "inhabited" if it is currently being used for residential purposes, even if it is temporarily *unoccupied,* i.e., no person is currently present. A formerly inhabited dwelling becomes *uninhabited only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling.*... [¶] ... [¶] ... If the person is using the structure as a habitation when the burglary or robbery occurs, his possible intent to abandon the habitation in the future does not alter its character as an inhabited dwelling.'" (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 970–971 (*Aguilar*); *People v. Tessman* (2014) 223 Cal.App.4th 1293, 1299–1300; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 320.)

Thus, a vacation house is an inhabited dwelling (*People v. DeRouen, supra,* 38 Cal.App.4th at p. 92), and a house vacated during extensive remodeling remains an inhabited dwelling (*People v. Glazier, supra,* 186 Cal.App.4th at p. 1161), as does a dwelling vacated due to fire or other disaster (*Aguilar, supra,* 181 Cal.App.4th at pp. 971–972). The house of an elderly owner residing in a skilled nursing facility was found to be an inhabited dwelling, where the owner intended to return, notwithstanding that he may have been taken off life support shortly before his house was burglarized. (*People v. Meredith* (2009) 174 Cal.App.4th 1257, 1259–1260, 1268–1269.) In an analogous situation, this court found that a vacant but furnished and maintained house remained an inhabited dwelling even though the owner had been confined to a boarding residence for the past two and one-half years and there was doubt she would return. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 800–802.) These cases share in common evidence that while the dwellings were unoccupied at the time of the crime, the owners or occupants intended to return and did not abandon their dwellings or intend to leave them permanently.

We take further note of the recent decisions in *Vasquez* and *Burkett*. In *Vasquez,* the Court of Appeal affirmed the defendant's first degree burglary conviction where he broke into a house he had previously rented. (*Vasquez, supra,* 239 Cal.App.4th at p. 1514.) The house had been sold following his eviction (*id.* at pp. 1514–1515) and the new owner "was generally in or around the premises of her new home" (*id.* at p. 1517). "She introduced herself to a neighbor, transferred the utilities to her personal accounts, notified creditors of her new address, and began painting and renovating the home." (*Ibid.*) There were tools and some personal belongings in the house, and she had added window locks to the house. (*Ibid.*) The court found the evidence was sufficient to support the jury's finding the house was an inhabited dwelling, even though the new owner had not yet moved in or started sleeping there. (*Id.* at pp. 1514, 1517.)

In contrast, the Court of Appeal reversed the defendant's first degree burglary conviction in *Burkett,* which also involved a soon to be fully occupied house. (*Burkett, supra,* 220 Cal.App.4th at pp.574–575.) The owner had vacated the house years before in what was intended to be a permanent relocation, and he kept the house as a rental property. (*Id.* at pp. 580–581.) After the owner lost the house he moved to in foreclosure proceedings, he gave his tenant notice that he needed to move back into the house she was renting from him. (*Id.* at pp. 575, 580.) The tenant vacated the house and turned off the utilities, but she still had the keys. (*Id.* at p. 575.) The next day, the defendant broke into the empty house and did some damage in the course of stealing various metal items, including sink pipes. (*Id.* at p. 576.) The owner received the keys from his former tenant after the burglary,

there was no testimony regarding turning the utilities on, and he moved into the house approximately one week after the burglary. (*Id*. at p. 575.)

In finding the house was not an inhabited dwelling at the time of the burglary, the court concluded the circumstances best fit the rule that "a formerly inhabited dwelling becomes uninhabited when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling." (*Burkett*, *supra*, 220 Cal.App.4th at p. 581, citing *People v. Guthrie* (1983) 144 Cal.App.3d 832, 838–840.) The court considered cases involving "when a current habitation ends" and "when habitation begins," concluding that "none of the indicia [of habitation were] present except for the self-declared intent of the owner to occupy the house in the future." (*Burkett*, *supra*, at pp. 581–582.) Relevant to the decision in *Burkett* was evidence that the owner's original relocation was intended to be permanent and although plans were in place to move back in at the time of the burglary, that was due to a reversal of fortune. (*Id*. at pp. 580–581.) Further, the owner "was not resuming occupancy in a home filled with his furnishings after an extended absence," and "[h]e was not shifting back and forth between two homes."[8] (*Burkett*, *supra*, at p. 581.)

Arambula and Munguia argue that Tejeda's house was merely a construction site, not an inhabited dwelling. Further, Tejeda was only using it as storage for furniture and tools, and the fact Tejeda spent some nights there to protect his property is not enough to show it was his "home away from home." (*People v. Long* (2010) 189 Cal.App.4th 826, 837.) They point out that Tejeda tore down the house entirely and had not completed the rebuild at the time of the burglary. Given the house's demolition, they contend the fire was not the sole cause of the Tejeda family's departure from the house and the natural disaster exception in section 459 does not apply. Additionally, Tejeda kept no toiletries or other personal items at the house, there was running water but no electricity, his wife and children never returned to the house and he did not intend to move in when construction was completed.

We are not persuaded. The Tejeda family moved out of their home solely because it was damaged by the fire; they neither abandoned the house nor moved out permanently with no intention of returning. (*Aguilar*, *supra*, 181 Cal.App.4th at p. 972.) That Tejeda decided to demolish the house and rebuild it does not alter the fact that the fire forced the family out of their home as an initial matter, and we do not find Arambula's and Munguia's assertion that the disaster provision is inapplicable compelling. (*Ibid*.)

Although the rebuilding process spanned a number of years, Tejeda, a general contractor, explained that he was rebuilding it himself and had other projects to schedule around. It is also true that at some point after the fire, there was no dwelling by virtue of its demolition. However, at the time of the burglary, the house was 95 percent rebuilt, with only the kitchen left to finish. While the electricity to the house was not turned on, there was running water, furnishings for the house were present and Tejeda was sleeping there two to three times a

---

[8] We observe there is a dissenting opinion in *Burkett*. The majority opinion focused on the owner's intent when he vacated the house years before and the degree to which he had executed his plan to reoccupy the then vacant house. The dissenting justice stated "that the house is an inhabited dwelling if, at the time of the burglary, the owner, who lived in the house before, intends to return and make it his home again," and the owner's past intent should not prevail over his present intent, which was to again occupy the house. (*Burkett, supra*, 220 Cal.App. at p. 584.) It is unnecessary for us to decide which path we would follow because the facts in this case differ from those in *Burkett*, with respect to both the owner's intent at the time the dwelling was vacated and the extent of his reoccupancy at the time of the burglary.

week on one of the mattresses. Further, Tejeda continued to receive his mail at the house following the fire and that address remained his address of record with his licensing board.

We also find Arambula's and Munguia's focus on who was going to live in the house in the future misplaced on these facts. Whether Tejeda, he and his family, or just his estranged wife and children ultimately moved in, the house was their family home before the fire and at the time they vacated the house, they planned to move back in once the house was rebuilt. While Tejeda testified he and his wife had since separated, he still owned the house, he was continuing to rebuild it, he was staying there several times a week, and he planned to have his wife and children move back in once it was finished.

Thus, although neither Tejeda nor his family had yet resumed occupancy of the house full time, other factors were present that indicated Tejeda was inhabiting the house at the time of the burglary. We have no difficulty concluding that a reasonable person in Tejada's shoes would have expected some protection from the unauthorized intrusion that occurred, and we find the jury's determination that Arambula and Munguia burglarized an inhabited dwelling was supported by substantial evidence. (*Vasquez*, *supra*, 239 Cal.App.4th at p. 1517; *Glazier*, *supra*, 186 Cal.App.4th at pp. 1160–1161; *Aguilar*, *supra*, 181 Cal.App.4th at p. 972.)

We note that consideration of the concerns underlying first degree burglary— "protection of an occupant's possessory interest in the safe habitation of a building"—further supports our conclusion in this case. (*Glazier*, *supra*, 186 Cal.App.4th at p. 1158; accord, *Aguilar*, *supra*, 181 Cal.App.4th at p. 970.) Tejeda was sleeping there periodically and when he entered the house on the morning of May 5, 2014, there was an intruder inside and that intruder's two companions returned to the house while he was outside waiting for police. Their actions clearly violated Tejeda's possessory interest in his house and "increased the danger of personal injury and the risk of '"a violent confrontation during a burglary."'" (*Vasquez*, *supra*, 239 Cal.App.4th at p. 1517; accord, *Glazier*, *supra*, at pp. 1160–1161; *Aguilar*, *supra*, at pp. 970, 972.)

(LD 4 at 6–8, 11–16) (footnote in original).

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

As the Supreme Court has stated,

> Jackson . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Here, the California Court of Appeal cited to California state cases that held: (1) a formerly inhabited dwelling becomes uninhabited only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling; and (2) a house vacated during extensive remodeling or due to fire or other disaster remains an inhabited dwelling. These determinations are binding on this Court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Viewing the record in the light most favorable to the prosecution, a rational trier of fact could have found true beyond a reasonable doubt that the house where the offense occurred was an inhabited dwelling. As noted by the California Court of Appeal, the Tejeda family moved out of their home due to a fire, and after demolishing and rebuilding the house, it was intended that some configuration of their family was to move back in and use the house as a dwelling. (2 RT 280, 289, 335–37, 375–77). Moreover, at the time of the offense the house was ninety-five percent rebuilt with running water and furnishings stored inside. (2 RT 278–82, 336–37). Mr. Tejeda was sleeping at the house two to three times a week, continued to receive his mail at the house, and the house's address remained Tejeda's address of record with his licensing board. (2 RT 278, 281, 378).

"When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," Cavazos, 565 U.S. at 7, the Court finds that the state court's

decision denying Petitioner's sufficiency of evidence claim with respect to the inhabited dwelling element was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

### B. Person Present Allegation

In his second claim for relief, Petitioner asserts that the evidence was insufficient as a matter of law to support the jury's true finding on the person present allegation because the commission of a burglary is complete upon entry and no one, other than an accomplice, was present at the time of entry. (ECF No. 19 at 4). Respondent argues that this claim is not cognizable in federal habeas because it essentially challenges the state court's interpretation of state law and that the California Court of Appeal reasonably rejected Petitioner's claim. (ECF No. 20 at 20–21).

This claim challenging the jury's person present finding was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned opinion. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct at 1192.

In denying Petitioner's claim regarding California Penal Code section 667.5(c)(21)'s "person present" allegation or occupied burglary enhancement, the California Court of Appeal stated:

### II. Occupied Burglary Enhancement

Arambula argues that the evidence is insufficient to support the jury's occupied burglary enhancement finding, and Munguia argues that under the plain language of the statute, the evidence is insufficient to support the enhancement as a matter of law. The premise underlying both parties' arguments is that the commission of burglary is complete upon entry and no one, other than an accomplice, was present at that time.

The People contend it is well recognized that a burglary continues after the time of entry with the intent to commit theft or another felony, and the burglary was ongoing when Tejeda entered the residence.

We review Arambula's and Munguia's challenges to the legal sufficiency of the undisputed evidence supporting the occupied burglary enhancement de novo.[9] (*People v. Perkins* (2016) 244 Cal.App.4th 129, 136, 197 Cal.Rptr.3d 743; *People v. Harris* (2014) 224 Cal.App.4th 86, 89, 168 Cal.Rptr.3d 305; *People v. Elder* (2014) 227 Cal.App.4th 411, 421, 174 Cal.Rptr.3d 192; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 316, fn. 3, 51 Cal.Rptr.3d 678.)

**A. Section 667.5, Subdivision (c)(21)**

Pursuant to section 667.5, subdivision (a):

> "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows:
>
> "(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition to and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior offense was one of the violent felonies specified in subdivision (c). However, no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

First degree burglary where a nonaccomplice third party is present was elevated to a violent felony within the meaning of section 667.5, subdivision (c), in 2000 as part of Proposition 21. (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336, 66 Cal.Rptr.3d 738 (*Singleton*).) "Occupied burglary plainly presents a potential for violence and consequently merits enhanced punishment." (*Doe v. Saenz*, *supra*, 140 Cal.App.4th at p. 988, 45 Cal.Rptr.3d 126; accord, *People v. Debouver* (2016) 1 Cal.App.5th 972, 982, 205 Cal.Rptr.3d 318; accord, *People v. Harris*, *supra*, 224 Cal.App.4th at p. 91, 168 Cal.Rptr.3d 305.) It "does not require the use or threat of force. Indeed, the crime does not require any contact between the defendant and the occupant. The mere presence of a nonaccomplice in the dwelling is sufficient. Further, knowledge that a dwelling is occupied is not an element of occupied burglary. Thus, a burglary may qualify as an occupied burglary under ... section 667.5[, subdivision ](c)(21) even though the defendant had no contact with the occupant and thought no one was present in the home during the burglary." (*Doe v. Saenz*, *supra*, at p. 987, 45 Cal.Rptr.3d 126.)

---

[9] Citing *In re K.F* (2009) 173 Cal.App.4th 655, 92 Cal.Rptr.3d 784, Arambula contends this claim was not forfeited on appeal by her trial counsel's failure to object because "[s]ufficiency of the evidence has always been viewed as a question necessarily and inherently raised in every contested trial of any issue of fact, and requiring no further steps by the aggrieved party to be preserved for appeal." (*Id.* at p. 660, 92 Cal.Rptr.3d 784.) The People do not argue otherwise and we therefore assume without deciding that this claim was not forfeited. (See *People v. McCullough* (2013) 56 Cal.4th 589, 593, 155 Cal.Rptr.3d 365, 298 P.3d 860 ["neither forfeiture nor application of the forfeiture rule is automatic"]; see also *People v. Williams* (2013) 218 Cal.App.4th 1038, 1052–1053, 160 Cal.Rptr.3d 779 [reaching issues intertwined with statutory interpretation notwithstanding forfeiture objection because it "serves the interest of avoiding similar errors in future cases"].)

## B. Meaning of "[D]uring the [C]ommission of the [B]urglary"[10]

"The canons of statutory interpretation are well settled." (*Singleton*, *supra*, 155 Cal.App.4th at p. 1337, 66 Cal.Rptr.3d 738.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196; see *In re Gilbert R.* (2012) 211 Cal.App.4th 514, 519, 149 Cal.Rptr.3d 608.)

In this case, it is undisputed that Tejeda was not in the residence when Arambula, Munguia and Ribeiro entered it. He later entered the residence while Arambula was still upstairs. Munguia and Ribeiro returned to the residence shortly thereafter, where they encountered Tejeda waiting outside of the house for police to arrive.

Arambula's and Munguia's arguments focus on the completion of the crime in terms of the elements and the fact that Tejeda was not present in the residence at the time of entry. We agree that assuming the requisite intent is present, burglary is technically complete upon entry, as the elements of the offense have been satisfied. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042, 31 Cal.Rptr.2d 128, 874 P.2d 903; *People v. McEntire* (2016) 247 Cal.App.4th 484, 491, 202 Cal.Rptr.3d 128.) However, there is a distinction between the point at which the commission of a burglary is technically complete for the purpose of establishing criminal liability and the point at which the commission of a burglary is complete in that it has ended, and we reject Arambula's and Munguia's positions that the former controls with respect to the occupied burglary enhancement. (*Montoya*, *supra*, at pp. 1039–1043, 31 Cal.Rptr.2d 128, 874 P.2d 903.)

In *Montoya*, the California Supreme Court addressed the duration of the crime of burglary. (*Montoya*, *supra*, 7 Cal.4th at p. 1038, 31 Cal.Rptr.2d 128, 874 P.2d 903.) Although it did so in the context of aider and abettor liability rather than the occupied burglary enhancement, we find the analysis instructive. (*Ibid.*)

As in this case, the defendant in *Montoya* argued that because the crime of burglary is complete with respect to the elements of the offense upon entry, aider and abettor liability was dependent upon forming "the requisite intent to commit, encourage, or facilitate the offense *prior to or during entry by the perpetrator*." (*Montoya*, *supra*, 7 Cal.4th at pp. 1039–1040, 31 Cal.Rptr.2d 128, 874 P.2d 903.) The court had previously concluded in a robbery case that "the temporal threshold for establishing guilt—a fixed point in time at which all elements of the substantive offense are satisfied so that the offense itself may be considered to have been '*initially* committed' rather than simply attempted—is *not* synonymous with the 'commission' of that crime for the purpose of determining aider and abettor liability." (*Id.* at p. 1040, 31 Cal.Rptr.2d 128, 874 P.2d 903.) Applying that analysis to the crime of burglary, the court determined "that the duration of a burglary ... extends until the perpetrator's [final] departure from the structure." (*Id.* at pp. 1046–1047, 31 Cal.Rptr.2d 128, 874 P.2d 903.)

In reaching this conclusion, the court considered the elements of burglary and the interests the law sought to protect, observing, "It is manifest that the increased danger to the personal safety of the occupant, and the increased risk of loss or damage to his or her property contemplated by the statutory proscription, do not terminate at the moment entry is accomplished, but rather continue while the perpetrator remains inside the structure. Certainly, an absent occupant could

---

[10] Section 667.5, subdivision (c)(21).

return at any moment and be faced with the danger created by the prior entry." (*Montoya*, *supra*, 7 Cal.4th at p. 1043, 31 Cal.Rptr.2d 128, 874 P.2d 903.) "Moreover, as long as the perpetrator remains inside the structure, the increased danger to the personal safety of the occupant and the increased risk of loss or damage to his or her property continues, whether the perpetrator commits a felony or theft different from that intended at the time of entry, or even if no felony or theft is completed." (*Ibid.*)

The court drew additional support from comparing burglary to sex offenses, stating, "[T]he victim of a rape would not agree the offense was completed simply because all legal elements of the offense were established by the initial forcible penetration. [Citation.] Similarly, one who happens to be at home during a burglary and becomes aware not only of the entry itself, but of the burglar's continued presence, would not agree the offense was completed once the entry was accomplished, but rather would conclude the burglary ceased only when the burglar departed from the structure and the danger was past. One happening to arrive home after the burglar's entry but while he or she still is present in the residence would reach the same conclusion. It also is apparent that, even if the occupant is not present, the risk to property would continue during the entire period the burglar remains in the structure and is not diminished simply because the entry itself has been accomplished." (*Montoya*, *supra*, 7 Cal.4th at p. 1045, 31 Cal.Rptr.2d 128, 874 P.2d 903, fn. omitted.)

The considerations underlying the court's conclusion in *Montoya* apply with equal force to the occupied burglary enhancement, which by its plain language applies to the presence of a nonaccomplice *during the commission of a burglary*. Occupied burglary was elevated to a violent felony because of the recognized dangers inherent in burglarizing an occupied residence. The briefest of overlaps between entry and the presence of a nonaccomplice suffices for the enhancement (*People v. McEntire*, *supra*, 247 Cal.App.4th at p. 492, 202 Cal.Rptr.3d 128; *People v. Garcia* (2004) 121 Cal.App.4th 271, 280–281, 16 Cal.Rptr.3d 833), and it matters not whether a nonaccomplice is present at the time of entry or interrupts the burglary in progress; in either circumstance, the nonaccomplice is present during the commission of the burglary, thereby creating the very situation of danger at which the enhancement is directed.

Munguia urges us to focus on the plain language of the statute and we have done so. While criminal liability attached at the time of entry and Tejeda was not then present, Arambula had not yet departed the residence for the final time when Tejeda entered it.[11] He was, therefore, present "during the commission of the burglary" and the enhancement, by its plain language, applies.[12] (§ 667.5, subd. (c)(21).)

---

[11] Munguia returned to the house in a vehicle and asked if Tejeda would let his friend out who had been left behind. Although Munguia does not argue otherwise, we note this evidence is sufficient to support a reasonable inference that Munguia had not departed the residence for the final time. (*Montoya*, *supra*, 7 Cal.4th at pp. 1046–1047, 31 Cal.Rptr.2d 128, 874 P.2d 903.)

[12] Although we do not find reliance on dictionary definitions necessary here, given Munguia's stated view of the ordinary, commonplace meaning of "commission," we observe that Black's Law Dictionary (9th ed. 2009) at page 306 defines "commission" as "[t]he act of doing or perpetrating (as a crime)." (See *Ross v. Blake* (2016) ⸺ U.S. ⸺, ⸺, 136 S.Ct. 1850, 1858–1859, 195 L.Ed.2d 117 [considering ordinary meaning of statutory language by reference to dictionaries]; see *People v. Castillolopez* (2016) 63 Cal.4th 322, 327, 202 Cal.Rptr.3d 703, 371 P.3d 216 [same]; see also *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1185, 138 Cal.Rptr.3d 178 [same].) Webster's New World Dictionary (2d college ed. 1982) at page 285 defines "commission" as "the act of committing or doing; perpetration, as of a crime." Reliance on the ordinary, commonplace meaning of commission offers no support for

The *Singleton* decision, which is cited by all parties, interpreted the meaning of "present in the residence" under section 667.5, subdivision (c)(21). The Court of Appeal found that "[s]ection 667.5, subdivision (c)(21) is plain on its face, and it requires a person, other than an accomplice, be '*present in the residence* during the commission of the burglary.' (Italics added.) The plain meaning of 'present in the residence' is that a person, other than the burglar or an accomplice, has crossed the threshold or otherwise passed within the outer walls of the house, apartment, or other dwelling place being burglarized." (*Singleton*, *supra*, 155 Cal.App.4th at p. 1337, 66 Cal.Rptr.3d 738.)

Our decision here presents no departure from any principles articulated by the Court of Appeal in *Singleton*. The focus in that case was the presence of a nonaccomplice *in* the residence, however, and the court held the tenant's presence outside of the apartment in an exterior common hallway was not presence *in* the residence as required under the statute. (*Singleton*, *supra*, 155 Cal.App.4th at pp. 1337–1338, 66 Cal.Rptr.3d 738; but see *People v. Debouver*, *supra*, 1 Cal.App.5th at pp. 981–982, 205 Cal.Rptr.3d 318 [enhancement applied where apartment manager caught the defendant burglarizing vehicles in secured garage that shared roof with and was integrated part of apartment complex].) There is no question Tejeda was *in* the residence prior to the completion of the burglary, and on the issue presented here, *Singleton* is inapposite.

Our conclusion also draws support from the decision in *People v. Alvarado* (2001) 87 Cal.App.4th 178, 104 Cal.Rptr.2d 624 (*Alvarado*), cited by the People. In that case, the Court of Appeal considered the defendant's substantial evidence challenge to the jury's finding he committed rape " 'during the commission of a burglary' " within the meaning of section 667.61, subdivision (e)(2) (the "One Strike" law) (*Alvarado*, *supra*, at pp. 183, 185, 104 Cal.Rptr.2d 624), and held "that the phrase 'during the commission of a burglary' includes the period of time that a burglar remains on the premises after entry and extends until the burglar has reached a place of temporary safety" (*id.* at p. 183, 104 Cal.Rptr.2d 624).

Although *Alvarado* concerned rape during the commission of a burglary, as Arambula points out, it nonetheless addressed the statutory meaning of " 'during the commission of a burglary' " in response to the defendant's argument that "under section 667.61[, subdivision ](e)(2), a rape 'during the commission of a burglary' does not include a rape after the burglary has been *initially* committed." (*Alvarado*, *supra*, 87 Cal.App.4th at p. 185, 104 Cal.Rptr.2d 624.) The issue in *Alvarado* and the issue here share the same completion of the crime argument directed at the same statutory phrase, and both statutes are intended to enhance the punishment for certain crimes based on recognition of the increased danger, or potential danger, to victims of residential burglary. (*People v. Debouver*, *supra*, 1 Cal.App.5th at p. 982, 205 Cal.Rptr.3d 318; *People v. Harris*, *supra*, 224 Cal.App.4th at p. 91, 168 Cal.Rptr.3d 305; *Doe v. Saenz*, *supra*, 140 Cal.App.4th at p. 988, 45 Cal.Rptr.3d 126; *Alvarado*, *supra*, at pp. 186–187, 104 Cal.Rptr.2d 624.)

We are not persuaded by Arambula's contention that the analysis in *Alvarado* has no application here and we agree with the court in *Alvarado*, which stated: "We

---

the view that "commission" as contemplated by section 667.5, subdivision (c)(21), equates to "the temporal threshold for establishing guilt" relevant to determining criminal liability. (*Montoya*, *supra*, 7 Cal.4th at p. 1040, 31 Cal.Rptr.2d 128, 874 P.2d 903.) Arambula was clearly still engaged in "the act of committing or doing" the burglary when Tejeda entered the residence. (Webster's New World Dict., *supra*, at p. 285.)

find [the] defendant's technical view of 'during the commission of a burglary' to be unreasonably narrow and believe it would substantially frustrate the purpose of [the statute]."[13] (*Alvarado*, *supra*, 87 Cal.App.4th at p. 187, 104 Cal.Rptr.2d 624.)

Accordingly, we find no merit to Arambula's and Munguia's arguments that because Tejeda was not present in the residence at the time of entry, he was not present during the commission of the burglary.

Munguia, 7 Cal. App. 5th at 109–14 (footnotes in original).

Here, Petitioner asserts that the true finding on the person present allegation was insufficient *as a matter of law* because the commission of a burglary is complete upon entry and no one other than an accomplice was present at that time. (ECF No. 19 at 4). Petitioner's claim that the person present enhancement under California Penal Code section 667.5(c)(21) requires another person, other than an accomplice, to be present in the residence at the time of entry is not cognizable in federal habeas corpus. See Bradshaw, 546 U.S. at 76 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

## V.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the first amended petition for writ of habeas corpus (ECF No. 19) be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be

---

[13] The People's citations to *People v. Elder*, *supra*, 227 Cal.App.4th at page 423, 174 Cal.Rptr.3d 192 and *People v. Walls* (1978) 85 Cal.App.3d 447 at pages 452–453, 149 Cal.Rptr. 460 also support our conclusion that application of section 667.5, subdivision (c)(21), is not limited to circumstances where the nonaccomplice is present in the residence at the time of entry and Arambula's criticism of those authorities is equally unpersuasive.

captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**March 5, 2019**__

_____
UNITED STATES MAGISTRATE JUDGE